Dismissed in part;  reversed and remanded in part.

882 A.2d 980

CHARLES B. DAVIS AND BARBARA DAVIS, PLAINTIFFS–APPELLANTS v. EILEEN STRAZZA, NONA BERNESBY AND CHRISTOPHER BERNESBY, DEFENDANTS–RESPONDENTS, AND MORRIS LEO GREB AND NANCY FEINBERG, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued September 19, 2005—Decided October 4, 2005.

Before Judges Alley, C.S. Fisher and Yannotti.

*Charles B. Davis,* appellant, argued the cause pro se.

*Noel E. Schablik* argued the cause for respondents (*Mr. Schablik and John T. Knapp,* on the brief).

The opinion of the court was delivered by

YANNOTTI, J.A.D.

Plaintiffs Charles B. Davis and Barbara Davis appeal from an order entered May 24, 2002 denying their motion for partial summary judgment and an order entered November 22, 2002 granting summary judgment in favor of defendants Eileen Strazza, Nora Bernesby and Christopher Bernesby. We affirm.

The facts relevant to the issues raised on this appeal are essentially undisputed. On May 31, 2001, plaintiffs and defendants entered into a contract under which plaintiffs agreed to sell and defendants agreed to buy certain real property in South Orange, New Jersey. The contract provided in pertinent part that:

> [t]his agreement is contingent upon the purchaser obtaining a conventional mortgage at a prevailing rate of interest for 30 years with monthly payments based upon a 30 year payment schedule. The purchaser agrees to make immediate written application for such financing and to pay applicable original fees or points. If a written mortgage commitment is not received in thirty (30) days, or any agreed upon extensions, either party may cancel this contract.

The agreement required defendants to make a deposit of $25,000, which would be held in the trust account of defendants' attorney until closing of title. In addition, the agreement provided that, if the contract is "legally and rightfully" cancelled, the deposit would be returned to defendants and the parties will be free of liability to each other. The contract established a closing date of August 10, 2001. Pursuant to the terms of the agreement, defendants deposited $25,000 in the trust account of their attorney.

Defendants applied for mortgage financing and, on June 18, 2001, New Century Mortgage Company issued a written mortgage

commitment. The first page of the commitment stated that the loan would be funded if defendants meet all of the terms and conditions in the commitment, "and any and all attached riders indicated, which comprise an integral part of this commitment." The attached rider consisted of three pages setting forth certain terms and conditions, including the requirement that defendants verify the funds available for closing and provide an executed HUD–1, or equivalent closing statement, respecting the sale of any property that is a source of such funds. The Bernesbys owned property in West Orange, New Jersey, and Strazza owned property in Montclair, New Jersey. The sale of both properties was necessary to provide funds to close.

On June 21, 2001, defendants' attorney provided a copy of the first page of the mortgage commitment to plaintiff's attorney. Defendants undertook to have plaintiffs' home inspected and, on August 1, 2001, requested that the closing date be extended to September 28, 2001. Plaintiffs in turn demanded $1,000 to extend the closing date and also sought agreement by defendants to a liquidated damages clause.

On August 6, 2001, before defendants had responded to plaintiffs' demands, New Century advised defendants by letter that the mortgage commitment was cancelled because it was unable to verify account balances. The letter stated that properties "required to be sold will not be sold" and sufficient assets were not available for closing. By letter dated August 7, 2001, defendants advised plaintiffs that their mortgage application had been denied and they were terminating the contract. Plaintiffs refused to consent to the termination of the agreement. Efforts to resolve the matter failed, and plaintiffs filed this action, in which they asserted claims against defendants for breach of contract, negligent misrepresentation and fraud.[1]

---

[1] Plaintiffs also asserted claims against defendants' attorney for negligent misrepresentation and fraud. They later amended their complaint to assert a claim for legal malpractice against their own attorney. Plaintiffs withdrew their

On April 2, 2002, plaintiffs filed a motion for partial summary judgment on liability. Defendants filed a cross-motion for summary judgment. The judge denied the motions without prejudice by order entered May 24, 2002. In a decision set forth on the record, the judge determined that because the contract was contingent upon the defendants' obtaining a 30–year conventional mortgage and because the defendants did not obtain such a mortgage, they had the right to cancel the contract and to the return of their deposit with interest. The judge added, however, that before the matter could be resolved, it was essential for the court to know what steps defendants had taken to sell their homes. The judge said that if defendants acted in good faith, in endeavoring to comply with the condition of the mortgage commitment, defendants would be entitled to prevail.

Defendants again moved on September 23, 2002 for summary judgment. Plaintiffs filed a cross-motion for reconsideration of the judge's May 24, 2002 order and renewed their earlier motion for partial summary judgment. Based on the submissions, which detailed defendants' efforts to sell their properties, the judge found that defendants acted in good faith in endeavoring to comply with the condition imposed in the mortgage commitment. The judge therefore entered an order on November 22, 2002 denying plaintiffs' motions, granting summary judgment in favor of defendants and ordering the return to defendants of their deposit monies plus interest. This appeal followed.

Plaintiffs argue that defendants were obligated to close under the terms of the agreement, and since they failed to do so, they were in breach of the contract. They also contend that there were genuine issues of material fact concerning defendants' efforts to sell their properties, and therefore summary judgment was inappropriate. We disagree.

---

claim against defendant's counsel for fraud. They settled their claim against their attorney. After trial, a jury found that defendants' attorney was negligent and determined he was responsible for 10% of plaintiff's damages.

In *Farrell v. Janik,* 225 *N.J.Super.* 282, 542 *A.*2d 59 (Law Div.1988), the parties entered into a contract for the sale of certain property. The agreement provided, among other things, that the contract was contingent upon the buyer's obtaining "a firm written commitment" for a conventional mortgage in the amount of $185,000. *Id.* at 285, 542 *A.*2d 59. The contract also stated that, if the mortgage commitment was not obtained by October 2, 1986, the agreement "shall be null and void." *Ibid.* The mortgage contingency date later was extended to October 20, 1986. The buyers applied for a mortgage and were informed that they would not qualify for a $185,000 loan but would probably qualify for a loan in the amount of $162,000. *Ibid.* On September 30, 1986, buyers and sellers received the mortgage commitment letter, which stated that the loan was only for $162,000. The commitment letter also stated that, prior to or simultaneous with the closing, the buyers must obtain a fully executed contract for the sale of their home at a minimum price of $275,000. *Id.* at 286, 542 *A.*2d 59. The realtor who appraised the home believed that such a price was unattainable and concluded that the contract had been nullified. *Ibid.* Asserting that they had not received a "firm written commitment" for a mortgage, buyers sought the return of their deposit monies and the sellers asserted that the buyers had breached the contract by failing to close. *Ibid.*

The judge in *Farrell* stated that a mortgage contingency clause "informs the sellers in clear and unmistakable language that the buyers do not possess sufficient funds to consummate the purchase without a loan." *Id.* at 287, 542 *A.*2d 59. The judge noted that the sellers knew or should have known that "what the buyers wanted and needed was a loan that was subject to no conditions or only conditions that were within their sole control." *Ibid.* The judge added:

A mortgage-loan-contingency clause certainly requires the buyers to use their best efforts to comply with any and all conditions imposed by the lending institution as a pre-condition for obtaining the loan. Thus, if a condition of the loan is obtaining employment verification, the buyer must execute and submit an authorization to secure the necessary documents from his employer. Or, if a condition is the issuance of a satisfactory termite inspection report, the buyer must order and pay

for such an inspection. But a condition that the buyers sell their home at a minimum price is not within the buyers sole control but is subject to the vagaries of market conditions and can be satisfied only if another person offers to purchase at the minimum price.
[*Ibid.*]

The court concluded that because the buyers did not obtain the required mortgage loan by October 20, 1986, the contract became null and void, according to the expressed terms of the agreement. *Id.* at 288, 542 *A.*2d 59.

Our decision in *McKenna v. Rosen,* 239 *N.J.Super.* 191, 570 *A.*2d 1277 (App.Div.1990), involved a similar factual scenario. There, plaintiffs entered into a contract to purchase from defendants certain real property. The contract was contingent upon the purchasers obtaining a "firm written commitment" for a 30–year conventional mortgage, at prevailing rates of interest. *Id.* at 192, 570 *A.*2d 1277. The agreement provided that, if the mortgage commitment was not obtained by a specified date, the agreement "shall be null and void unless purchasers immediately waive benefit of the mortgage contingency clause in writing, and consider the clause as having been fully satisfied." *Id.* at 193, 570 *A.*2d 1277. When received, the commitment included a condition that the buyers provide evidence of the sale of the buyer's previous residence with net proceeds of at least $90,000. *Ibid.* Because the buyers' home had been on the market for several months and had not been sold, they informed the sellers that they would not be able to accept the condition and they were terminating the agreement. *Ibid.* The sellers maintained that the buyers could not terminate if the commitment was conditional and they refused to refund the deposit monies. *Ibid.*

We held in *McKenna* that, because the buyers had not obtained a firm commitment for a mortgage loan, they were entitled to cancel the contract and a refund of their deposit. *Id.* at 194–96, 570 *A.*2d 1277. We endorsed the reasoning of the Law Division judge in *Farrell.* *Id.* at 193, 570 *A.*2d 1277. We stated that if a mortgage commitment includes conditions over which the borrowers have no control, the commitment is less than "firm." *Id.* at

194–95, 570 *A.*2d 1277. A contract requiring buyers to obtain a "firm commitment" is one in which the buyers intend to be bound "only if they could secure a mortgage commitment with contingencies they had the power to fulfill." *Id.* at 196, 570 *A.*2d 1277. We applied general principles of contract interpretation, noting that a contract must be construed "as a whole" and the language of the agreement must be "given its ordinary, reasonable meaning absent anything to show that it was used in a different sense." *Ibid.* We added:

> The interpretation which we give to the contract here, as in *Farrell,* is one which realistically allows for a determination of whether a mortgage commitment is firm. A purchaser has secured a firm commitment if any contingency is within his power alone to fulfill. If the fulfillment of the contingency is not within the sole control of the purchaser, the language of the contingent commitment should be interpreted to relieve him of his obligation under the realty contract. In such a case, the purchaser clearly bargained for the right to void the land purchase contract when the contingency could not be met. . . .
>
> [*Ibid.*]

■ We are satisfied that in this case the judge correctly applied the principles set forth in *Farrell* and *McKenna* in granting summary judgment in favor of defendants. The contract at issue here was expressly contingent upon defendants obtaining mortgage financing. The agreement required defendants to immediately apply for the mortgage. It also provided that either the buyers or the sellers could cancel the contract if a written mortgage commitment was not received within 30 days of the signing of the agreement. Although defendants received a written mortgage commitment, it was conditioned on, among other things, the sale of their properties. *Farrell* and *McKenna* make clear that, because fulfillment of such a condition is not within the sole power of the purchasers, the mortgage commitment was not firm and did not satisfy the contract's mortgage contingency clause. In these circumstances, defendants were not obligated to perform and had the right to cancel the contract.

Plaintiffs argue that defendants were required to terminate the agreement by June 30, 2001 and, having failed to do so, defendants were precluded from canceling the agreement thereafter. We

disagree. As we stated previously, the contract gave the parties the right to terminate in the event the buyers did not obtain the mortgage commitment within 30 days of the date of the agreement. Although defendants received the mortgage commitment within the required time frame, the commitment was subject to a contingency that plainly was beyond their sole ability to fulfill. *McKenna, supra,* 239 *N.J.Super.* at 196, 570 *A.*2d 1277. Because the buyers had not obtained a firm mortgage commitment within the time frame specified by the agreement, defendants had the right to cancel. However, the contract did not expressly require that they do so within the 30–day period for obtaining the commitment. Thus, we are satisfied that the agreement did not foreclose defendants from canceling the agreement after June 30, 2001.

We are convinced that such a conclusion accords with the apparent intention of the parties to this agreement. As we pointed out in *McKenna,* when a contract for the sale of realty is made contingent upon the purchaser obtaining firm mortgage financing, it is illogical to assume that the purchaser agreed to be bound to accept a mortgage commitment subject to a contingency that is beyond the purchaser's sole control. *Ibid.* In the absence of some language indicating a contrary intention by the parties, the agreement must be construed to relieve the purchaser of his or her obligations under the contract if the purchaser receives a mortgage commitment with such conditions. *Ibid.* Unless the contract provides otherwise, we must assume that the purchaser bargained for the right to void the agreement in these circumstances. *Ibid.*

Plaintiffs argue that the decision granting summary judgment in favor of defendants is inconsistent with our decision in *Malus v. Hager,* 312 *N.J.Super.* 483, 712 *A.*2d 238 (App.Div.1998). In our view, the motion judge correctly found that the *Malus* case was not controlling. In *Malus,* the parties entered into a contract for the sale of property which provided that buyers' obligation to perform was contingent upon the buyer obtaining a mortgage. The agreement stated that, in the event buyers failed to obtain the

mortgage within a specified period of time, the buyers or the sellers may void the contract within ten days thereafter. The agreement further stated that if the buyers or sellers do not void the agreement within this specified time period, the buyers and sellers waive their rights to void the contract under this provision. *Id.* at 484–85, 712 *A.*2d 238. The buyers applied for a mortgage loan and received a mortgage commitment within the required time frame. Under the commitment, the bank retained the right to cancel in the event the buyers' financial condition or employment status changed adversely. *Id.* at 485, 712 *A.*2d 238. When one of the buyers became unemployed, the bank declined to make the loan. The sellers refused to return the deposit monies and the buyers sued. *Ibid.*

We held in *Malus* that the sellers were entitled to retain the deposit monies. We refused to interpret the mortgage contingency clause to encompass not only the receipt of a mortgage commitment, but also the availability at closing of mortgage proceeds necessary to complete the purchase. We said that were we to interpret the clause in that manner, the parties would be left in "an intolerable state of limbo until the closing is finally consummated." *Id.* at 486, 712 *A.*2d 238. We added, "[c]onfusion and uncertainty can only result from extending, as a matter of law, the mortgage contingency clause to the date of closing." *Ibid.*

We are convinced that plaintiffs' reliance upon *Malus* is misplaced. In *Malus,* the mortgage contingency clause provided that the purchaser and seller could *only* void the contract if they acted within ten days of the period specified in the contract for obtaining the mortgage commitment. The agreement expressly provided that if the parties did not act within that time frame, they waived their rights to void the contract under that section of the agreement. *Id.* at 485, 712 *A.*2d 238. Here, by contrast, the agreement did not specify when the parties were required to cancel. It also did not contain a waiver of rights provision. Therefore, we are convinced that the *Malus* decision is not controlling here.

Plaintiffs additionally argue that the judge erred in granting summary judgment because there was a genuine issue of material fact as to whether defendants acted in good faith in endeavoring to sell their properties.  We are satisfied, however, that the evidence before the trial court was so "one-sided" that this factual issue could be resolved as a matter of law.  *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 *U.S.* 242, 252, 106 *S.Ct.* 2505, 2512, 91 *L.Ed.*2d 202, 214 (1986)).

With regard to the West Orange property, the record shows that during contract negotiations, the Bernesbys reduced their sale price. They also agreed to treat termite infestation, repair any termite damage and make certain repairs.  When the Bernesbys refused to make certain other repairs, the prospective purchasers cancelled the contract.  Concerning the Montclair property, the record shows that Strazza listed the house for sale at a reduced price because it was in substantial disrepair.  Strazza intended to sell the property "as is," with the exception of termite treatment. The prospective purchasers executed the contract for sale but, following the home inspection, demanded that Strazza make certain repairs.  Before Strazza responded to the demand, the purchasers cancelled the contract.

In our view, based on the evidence before her, the judge properly determined that that there was no genuine issue of material fact and defendants were entitled to judgment as a matter of law.  *R.* 4:46–2(c).  As the judge found, the evidence was insufficient to support a finding by a trier of fact that defendants acted in bad faith in endeavoring to sell their properties.  Accordingly, the judge did not err in granting summary judgment in favor of defendants.

Affirmed.